**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN SROGA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 08 C 1789** |
| | ) | |
| **P.O. WEIGLEN, Star No. 13384,** | ) | **Judge Ronald A. Guzmán** |
| **P.O. NIEDZWIECKI, Star No. 11319,** | ) | |
| **P.O. BLASZ, Star No. 10077, P.O.** | ) | |
| **TARALA, Star No. 19323, P.O.** | ) | |
| **JOHNSON, Star No. 17442, P.O. FICO,** | ) | |
| **Star No. 6284, P.O. VASQUEZ, Star** | ) | |
| **No. 19492, P.O. SCHILLING, Star No.** | ) | |
| **6449, P.O. LA CASA CALIZ, Star** | ) | |
| **No. 8686, individually, and THE CITY** | ) | |
| **OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Kevin Sroga has sued Chicago Police Officers Weiglen, Niedzwiecki, Blasz, Tarala, Johnson, Fico, Vasquez, Schilling, La Casa Caliz, and the City of Chicago for false arrest and conspiracy to violate his rights as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983 (Counts I-IV).  Sroga also brings supplementary state law claims of malicious prosecution against Officers Blasz, Tarala, Johnson, Fico and the City of Chicago (Counts V and VI).  Before the Court is defendants' motion for summary judgment.  For the reasons provided herein, the Court grants in part and denies in part defendants' motion.  The Court grants summary judgment as to Sroga's federal claims brought pursuant to 42 U.S.C. § 1983 (Counts I, II, III and IV).  The Court declines to exercise jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3) and dismisses Counts V and VI without prejudice.  This case is hereby terminated.

**Facts**

The pertinent facts are discussed below.  However, the Court notes that portions of plaintiff's submissions fail to comply with Local Rule 56.1.  (*See, e.g.,* Pl.'s LR 56.1(b)(3)(B) Stmt.; Pl.'s Am. LR 56.1(b)(3)(C) Stmt.; *see id*. (failing to cite to Pl.'s Aff. Supp. Denying Summ. J.).)  This Court provided Sroga with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" that clearly stated that he was required to comply with LR 56.1.  The notice also stated: "You also need to explain how the documents or declarations that you are submitting support your version of the facts."  (LR 56.2 Notice.)  District courts may, and this Court does, insist upon strict adherence to LR 56.1, even from a pro se litigant.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

**Discussion**

A district court grants summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  This Court must view the facts in a light most favorable to the non-movant and draw all reasonable inferences in his favor.  *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003).

**Section 1983 Claims (Counts I, II, III, and IV)**

In Counts I through III, Sroga sues Chicago Police Officers Weiglen, Niedzwiecki, Blasz, Tarala, Johnson and Fico in their individual capacity.  These defendants argue that based on the

2

undisputed facts, each should be afforded qualified immunity.

"Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). Qualified immunity "ordinarily should be decided by the court long before trial," *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), "because [t]he entitlement is an immunity from suit rather than a mere defense to liability," *id.* at 227 (quotation omitted). "Qualified-immunity claims are determined by reference to [a] two-part inquiry . . . ." *Purtell*, 527 F.3d at 621.

First, the court must consider . . . this threshold question:

> Taken in the light most favorable to the party asserting the injury, do the facts
> alleged show the officer's conduct violated a constitutional right? If the answer
> to this question is 'yes,' then the next, sequential step is to ask whether the right
> was clearly established at the time of the alleged violation.

*Id.* (quotation omitted). "In the specific context of a damages action brought under 42 U.S.C. § 1983 stemming from a warrantless arrest, the arresting officers will be immune from liability if a reasonable officer could have believed [the plaintiff's arrest] to be lawful, in light of clearly established law and the information the arresting officers possessed." *Jones v. Watson*, 106 F.3d 774, 778 (7th Cir. 1997) (quotations omitted). This is true no matter the motive of the officers in arresting the plaintiff. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). As long as "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[O]nly if no reasonable officer could have mistakenly believed that he had probable cause to arrest is the immunity forfeited." *Jones v. City of Chi.*, 856 F.2d 985, 994 (7th Cir. 1988). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

With regard to Count I, the Court must determine whether Officers Weiglen and Niedzwiecki should be afforded qualified immunity for arresting Sroga for disorderly conduct on March 30, 2006.  Under Illinois law, "[a] person commits disorderly conduct when he knowingly . . . [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."  720 Ill. Comp. Stat. 5/26-1(a)(1).  "Whether particular conduct is disorderly therefore depends not only on the conduct itself but also on the conduct's unreasonableness in relation to the surrounding circumstances."  *Biddle v. Martin*, 992 F.2d 673, 677-78 (7th Cir. 1993).  "Three elements are required:  the defendant's conduct must (a) be unreasonable, (b) disturb or alarm another, and (c) threaten to provoke or provoke a breach of the peace."  *Id.*  The term "breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility[,] . . . connotes conduct that creates consternation and alarm . . . [and] must be voluntary, unnecessary, and contrary to ordinary human conduct."  *People v. Allen*, 680 N.E.2d 795, 799 (Ill. App. Ct. 1997) (quotation omitted); *see People v. Duncan*, 631 N.E.2d 803, 804 (Ill. App. Ct. 1994) ("[U]rination in public . . . can be done in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace.")

In *Biddle v. Martin*, where an intoxicated citizen was violently opposed to the towing of his van, exhibited violent arm gestures, and refused to calm down, the court afforded the arresting police officers qualified immunity because this behavior "justifie[d] a reasonable belief that the citizen's resistance to the tow might escalate once the tow truck arrived, generating a real possibility of physical confrontation between Biddle and the tow truck driver or police officers."  992 F.2d at 677.  In particular, the court held that:  (a) the citizen's screaming profanities and gesticulating violently for ten minutes in response to information that his vehicle was to be towed was unreasonable; (b) a violent argument would likely disturb the officer; and

4

(c) the citizen's drunken tirade threatened to provoke a breach of the peace such that it created probable cause to arrest him for disorderly conduct. *Id.* at 678.

While similar, the facts in the instant case more strongly point to the conclusion that Officers Weiglen and Niedzwiecki should be granted qualified immunity. It is undisputed that Sroga had left keys in the ignition of the vehicle that was being towed. (Pl.'s Ex. C, Sroga Dep. at 101.) It is undisputed that Officers Weiglen and Niedzwiecki were at the scene and they exchanged words with Sroga. (Defs.' LR 56.1 Stmt. ¶¶ 18, 21-22.) Further, Sroga does not deny that he attempted to retract the keys from the ignition of the vehicle that was being towed by jumping on it. (*Id.* ¶ 23; Pl.'s Ex. C, Sroga Dep. at 101.) When asked at his deposition whether he jumped on top of his vehicle at any time while it was being towed, Sroga replied, "You know, I might have. I don't recall." (Pl.'s Ex. C, Sroga Dep. at 96.) When asked again, "So you may have jumped on the vehicle?" he responded, "I may have." (*Id.*) Sroga stated: "I tried to retract those keys from the ignition, because once the keys are gone, I don't have keys to the other cars." (*Id.* at 101.) When asked, "This is while the car was moving?" he responded, "It could have been." (*Id.*) Thus, Sroga's failure to deny that he jumped on top of a moving vehicle in an attempt to retrieve the keys vitiates any triable fact issue as to whether he did so.

As in *Biddle*, viewing the facts in the record in the light most favorable to him, a prudent officer could have viewed Sroga's act of trying to retrieve the keys by jumping on a moving car as unreasonable,[1] disturbing or alarming not only the officers, but also the tow driver and provoking a breach of the peace because it: (1) constituted a physical confrontation between

---

[1] *Cf. Lester v. City of Chi.*, 830 F.2d 706, 715 (7th Cir. 1987) ("Arguing with a police officer, even in a loud, offensive manner, may not, by itself constitute disorderly conduct. But that does not mean that arguing with a police officer may never be disorderly conduct.")

Sroga and the tow driver, (2) was clearly contrary to ordinary human conduct and (3) menaced public order and tranquility. Given the facts in the record and viewing them in Sroga's favor, the Court holds that a reasonable officer in Weiglen or Niedzwiecki's position could have mistakenly believed that he had probable cause to arrest Sroga for disorderly conduct. The Court thus grants defendants' summary judgment motion as to Count I.

With regard to Count II, the Court must determine whether Officers Blasz and Tarala should be afforded qualified immunity for arresting Sroga on July 6, 2006 for theft of lost or mislaid goods and interference with a public officer - obstructing justice. "At the time of the arrest police officers need probable cause that *a* crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged." *Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994) (emphasis original).

Under Illinois law, a person who obtains control over lost or mislaid property commits theft when he: (1) "[k]nows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner;" (2) "[f]ails to take reasonable measures to restore the property of the owner;" and (3) "[i]ntends to deprive the owner permanently of the use or benefit of the property." 720 Ill Comp. Stat. 5/16-2. "Possession may be actual or constructive." *People v. Wells*, 608 N.E.2d 578, 584 (Ill. App. Ct. 1993) (quotation omitted); *see* Illinois Pattern Jury Instructions, Criminal, No. 4.16. "A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person." *Wells*, 608 N.E.2d at 584 (quotation omitted). "If two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession." *Id.*

6

(quotation omitted).

It is undisputed that on July 6, 2006, Samuel Decero, a Field Investigator for the Department of Streets and Sanitation, saw Chicago Police Department ticket booklets in one of Sroga's vehicles and notified the officers on the scene, which included Officers Blasz and Tarala. (*Compare* Defs.' LR 56.1(a)(3) ¶¶ 26, 32, *with* Pl.'s LR 56.1(b)(3)(B) ¶¶ 26, 32.) It is also undisputed that Sroga is not a member of the Chicago Police Department. (*Compare* Defs.' LR 56.1(a)(3) ¶ 32, *with* Pl.'s LR 56.1(b)(3)(B) ¶ 32.) Though Decero recalled finding the booklets in a car and other officers recalled finding the booklets in a van, it is undisputed that they found Chicago Police Department arrest and ticket booklets inside a vehicle owned by plaintiff. When asked at his deposition: "Now, the '85 Ford van, the blue Ford van, did you have any Chicago police arrest booklets in your Ford at that time?" he answered, "There could have been . . . . I don't know for certain. That's what they claimed." (Pl.'s Ex. D, Sroga Dep. at 133.) When asked whether he had any notice of violation books in his car at that time, he answered, "There could have been." (*Id.*) When asked: "What about a City of Chicago traffic complaint booklet?" he responded, "There could have been." (*Id.* at 134.) Viewing the facts in Sroga's favor, the record also supports that on July 6, 2006: (1) the vehicle in which the booklets were found was also registered to plaintiff's brother, Robert Sroga, Jr., who had been, but no longer was, a Chicago Police Officer (*id.*; Pl.'s Ex. I, Blasz Dep. at 22); (2) Blasz knew that plaintiff had used the name Robert Sroga as an alias (Pl.'s Ex. I, Blasz Dep. at 23); and (3) Blasz knew that plaintiff's brother used to be, but no longer was, a Chicago police officer (*id.* at 22).

Given the totality of circumstances surrounding plaintiff's July 6, 2006 arrest, a reasonable officer in Blasz or Tarala's position could have believed that arresting plaintiff for theft of lost or misplaced property was lawful. First, Decero told the officers on the scene,

which included Blasz and Tarala, that Chicago Police Department ticket booklets were found in one of plaintiff's vehicles.  Viewing the facts in plaintiff's favor, a reasonable officer in Blasz and Tarala's position could have believed that plaintiff had both the power and intention to exercise control over booklets kept in his own vehicle.  Second, the official booklets were clearly marked "Chicago Police Department" so an officer in Blasz or Tarala's position could have believed Sroga had a reasonable means of identifying, and restoring the booklets to, their owner.  Third, a reasonable officer could surmise from a civilian's possession of official Chicago Police Department booklets that the booklets had been lost or mislaid.  Further, on the date of plaintiff's arrest, Blasz knew that neither plaintiff nor his brother were Chicago Police Officers.  Finally, given that each booklet was clearly marked "Chicago Police Department," that it would be easy for plaintiff to restore the booklets to the Chicago Police Department and that the booklets were located together on plaintiff's vehicle's dashboard where plaintiff could see them every time he entered the vehicle, a reasonable officer in Blasz or Tarala's position could believe that plaintiff intended to keep the booklets permanently.

Viewing the facts in plaintiff's favor, even if Blasz and Tarala knew that the vehicle in which the booklets was found was registered in both plaintiff and his brother's names, a reasonable officer could still believe that plaintiff had both an intention and the power to exercise control over the booklets because the vehicle was parked in front of plaintiff's, not his brother's, residence.  (*See* Pl.'s Ex. D, Sroga Dep. ¶¶ 115, 135.)  In sum, the Court holds that Blasz and Tarala are immune from liability because a reasonable officer could have believed the plaintiff's arrest for theft of lost or mislaid property was lawful, in light of clearly established law and the information Blasz and Tarala possessed.

With regard to Count III, the Court must determine whether Officers Fico and Johnson

8

should be afforded qualified immunity for arresting Sroga on September 22, 2006 for criminal trespass to state supported land. This crime "occurs when someone (1) enters upon state-supported land, (2) after receiving notice that such entry is forbidden, and (3) thereby interferes with another person's lawful use and enjoyment of the land." *People v. Jones*, 749 N.E.2d 466, 469 (Ill. App. Ct. 2001) (citing 720 Ill. Comp. Stat. 5/21-5(a)).[2] "The notice requirement is satisfied if the entrance to the land is posted with signs prohibiting unauthorized entry." *Id.* (citing 720 Ill. Comp. Stat. 5/21-5(b)).

The undisputed facts in the record show that on September 22, 2007, Sroga was leaving the Area 5 Police Headquarters at 5555 West Grand Avenue after having been released from custody on an I-bond. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 36-39.) On the previous day, he had been arrested for false impersonation of a public officer/employee, theft of lost or mislaid property, possession of a police scanner, failure to stop at a stop sign, driving on a revoked license, operating a vehicle without insurance, failure to wear a seat belt and driving without a valid registration. (*Id.*) Sroga does not base any of his instant claims on his being arrested on the previous day.

The following facts are also undisputed or deemed admitted pursuant to LR 56.1. Sroga exited the front door of the police station and walked back behind the police station where the squad cars are parked. (*Id.* ¶ 39.) Officer Johnson, who had seen Sroga during his arrest at the police station on the previous day, observed Sroga looking inside a series of parked unmarked vehicles in one of the rows of that lot. (*Id.* ¶ 40; Pl.'s Ex. L, Johnson Dep. at 14.) Officer Fico,

---

[2] Under Illinois law, a municipality's property has been held as a matter of law to be state supported land. *See People v. Stites*, 802 N.E.2d 303, 304 (Ill. App. Ct. 2003); *Jones*, 749 N.E.2d at 469.

who arrived separately on the scene, observed Sroga walking between the police squad cars in the Area 5 Police Department Personnel parking lot and looking into them. (*Id.* ¶ 40.) Although Sroga attempts to deny that he was walking between the squad cars and looking into them, his denial is not supported by that portion of the record to which he cites. (*See* Pl.'s Ex. E, Sroga Dep at 157-59. *Compare id.* ¶ 40, *with* Pl.'s LR 56.1(b)(3)(B) ¶ 40.) It is undisputed that the driveway entry points leading into the parking lot in which Officers Johnson and Fico arrested Sroga have signs posted that state "Parking Police Personnel Only." (Defs.' LR 56.1(a)(3) Stmt. ¶ 29.)

The Court concludes that a prudent person in light of the facts and circumstances known by Fico and Johnson on September 22, 2006, would have believed that Sroga: (1) had entered the Area 5 Police Department Personnel parking lot, which is state supported land; (2) was on notice because the entrance to the land was posted with signs stating "Parking Police Personnel Only"; and (3) interfered with Area 5 Police Department Personnel's lawful use of the land by making them fearful and apprehensive as to why someone who is not employed by the Area 5 Police Department would be peering into parked squad cars in an area restricted to Area 5 Police Department personnel. Accordingly, the Court holds that they had arguable probable cause to arrest Sroga, which is sufficient to grant them qualified immunity.[3]

With regard to Count IV, defendants argue that Sroga has not offered any evidence to establish the existence of an express or implied agreement between defendant Officers Weiglen, Niedzwiecki, Blasz, Tarala, Johnson, Fico, Vasquez, Schilling and La Casa Caliz to deprive him

---

[3]Although Sroga repeatedly opines that the officers at issue in this case lacked actual probable cause based on what Sroga knew at the time, qualified immunity merely requires that the arresting officers had arguable probable cause based on those facts that were available to them at the time of each arrest. *See Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

of his constitutional rights by falsely arresting him on March 30, 2006, July 6, 2006 and

September 22, 2007 and by maliciously prosecuting him for the charges relating to those arrests.

Defendants argue that summary judgment is thus appropriate on Count IV alleging a conspiracy

under 42 U.S.C. § 1983. The Court agrees.

First, Sroga may not maintain an action under section 1983 for malicious prosecution.

*See Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001) (holding that because there is no

"constitutional right not to be prosecuted without probable cause," a plaintiff may not state a

section 1983 claim simply by alleging that he was maliciously prosecuted). Further, it is clear

that *Brady v. Maryland*, 373 U.S. 83 (1963), is inapplicable because Sroga knew about the

alleged violation of his rights.

Second, Sroga's section 1983 conspiracy claim based on the purported agreement

between all of the individual officer defendants to falsely arrest him on March 30, 2006, July 6,

2006 and September 22, 2007 also fails. "To establish a prima facie case of civil conspiracy, a

plaintiff must show (1) an express or implied agreement among defendants to deprive the

plaintiff of his constitutional rights, and (2) actual deprivations of those rights in the form of

overt acts in furtherance of the agreement." *Thurman v. Vill. of Hazel Crest*, 570 F. Supp. 2d

1019, 1029 (N.D. Ill. 2008). "To defeat a defendant's motion for summary judgment on a §

1983 conspiracy claim, the plaintiff must demonstrate the existence of an agreement or acts

'sufficient to raise the inference of mutual understanding' between the defendants." *Swanigan v.

Trotter*, 645 F. Supp. 2d 656, 679 (N.D. Ill. 2009) (quoting *Amundsen v. Chi. Park Dist.*, 218

F.3d 712, 718 (7th Cir. 2000)). The existence of a conspiratorial agreement may be inferred

from circumstances of a case, but some facts must be established in order to create this

circumstantial inference. *See Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).

11

"Self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir. 1993).

Sroga merely argues in his response brief that "[a]ll of these Officer's [sic] share a common interest, they all have a personal knowledge of who the Plaintiff is and because of his alleged involvement in a vehicle accident with fellow officer Daniel Vasquez, Plaintiff has been falsely arrested on numerous occasions as acts of retribution." (Pl.'s Mem. Supp. Pl.'s Opp'n Summ. J. 21.) However, he failed to include any statement of additional fact or any statement in response to defendant's statements of fact that suggests there was an express or implied agreement among the individual defendants to deprive him of his constitutional rights. The statements of fact merely establish distinct incidents lacking a conspiratorial connection, and Sroga's self-serving, speculative assertions are insufficient. Clearly, Sroga has failed to create a genuine issue as to a material fact regarding a conspiratorial agreement.

Because the record does not contain evidence sufficient to raise a reasonable inference that the officers reached a mutual understanding to deprive Sroga of his constitutional rights, all officers are entitled to summary judgment as to Count IV.

With regard to Counts V and VI, Sroga's state law malicious prosecution claims, the Court declines to exercise supplemental jurisdiction over them and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). District courts may, and often do, decline to exercise supplemental jurisdiction over state-law claims even when the federal claims are dismissed late in the proceedings. *See* 28 U.S.C. § 1367(c)(3); *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008); *Myers v. County of Lake*, 30 F.3d 847, 848 (7th Cir. 1994); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1153 (7th Cir. 1990); *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir. 1990). Section 1367(d) also provides that "[t]he period of limitations for any claim

asserted . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).   This section "removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears."  *Myers*, 30 F.3d at 848-49.

In sum, the Court grants defendants' motion for summary judgment as to all of Sroga's federal claims (Counts I-IV), declines to exercise supplemental jurisdiction over his state law claims (Counts V and VI) and dismisses his state law claims without prejudice.  This case is hereby terminated.

## CONCLUSION

For the reasons provided herein, the Court grants in part and denies in part defendants' motion [doc. no. 76].  The Court grants summary judgment as to Sroga's federal claims brought pursuant to 42 U.S.C. § 1983 (Counts I, II, III and IV).  The Court declines to exercise jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3) and thus dismisses Counts V and VI without prejudice.  This case is hereby terminated.

**SO ORDERED**                                     **ENTERED:**


**February 17, 2010**                          _____
                                                **HON. RONALD A. GUZMAN**
                                                **United States Judge**

13